UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-360-KSF

GENESIS MEDICAL IMAGING, INC.                                                         PLAINTIFF

v.                                            **OPINION & ORDER**

PERRY M. DEMARS and
PMD SERVICES, LLC                                                                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of the plaintiff, Genesis Medical Imaging, Inc. ("Genesis"), for summary judgment and permanent injunction against the defendants, Perry M. DeMars and PMD Services, LLC (collectively "DeMars") [DE # 52]. Also before the court is the motion of the defendants for leave to file an amended answer. Both motions are ripe for review.

I.     **FACTUAL BACKGROUND**

Founded in 1998, Genesis is a national, independently-owned company engaged in the sale and service of magnetic resonance imaging ("MRI") and computerized tomography ("CT") scanning equipment for diagnostic use in hospitals, clinics, medical offices, and other similar facilities. Genesis employs over 75 people, including approximately 24 field service engineers, or FSEs. The FSEs service MRI and CT equipment for Genesis' customers through preventative maintenance on a monthly, bi-monthly, or quarterly basis. Genesis also dispatches FSEs to its customers on an as-needed basis. Genesis requires that all employees with access to sensitive information or proprietary information execute a Non-Compete Agreement as a precondition to their employment with Genesis.

In November of 2004, DeMars was terminated from his employment at General Electric ("GE"), where he serviced MRI and CT equipment, and satellite and microwave communications. He was subsequently hired by Genesis in February 2005 as an FSE. In this position, DeMars was responsible for providing technical support and service to customers primarily in Kentucky, but it was understood and DeMars accepted that he would occasionally be required to travel nationwide to serve as a backup FSE when other FSEs were on vacation or otherwise unavailable, or when Genesis obtained new customers in geographic areas without a dedicated FSE. The Non-Compete Agreement executed and delivered by DeMars to Genesis at the time of his employment provides in pertinent part as follows:

> (a)   I Perry M. DeMars hereby agree that during the period of my employment with Genesis Medical Imaging, Inc. (Genesis) [I] will not engage in any business activity, directly or indirectly, which competes or interferes with that of Genesis, nor assist in any way any competitor of Genesis.
>
> * * * *
>
> (c)   I acknowledge and agree that I shall have during the course of my employment access to confidential books, records, data, customer lists and information developed and used in the course of the business of Genesis and which will be disclosed to employees in confidence. I hereby agree that I will not, during or after my employment, disclose these items or other confidential information to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever. I also agree that upon my termination of employment with Genesis, for any reason whatsoever, I will return forthwith to Genesis, all papers, books, customer and vendor lists and any other documents and data belonging to or related to the business of Genesis.
>
> (d)   For a period of two (2) years following my termination of employment with Genesis, for any reason whatsoever, I shall not individually, or while employed by, or as a consultant or independent contractor with any corporation in the United States, canvas, solicit, divert, take away, or interface with Genesis' customers or perspective [sic] customers with whom Genesis has done business with or has had significant proposals outstanding with during twenty-four (24) months preceding the date of termination.

> (e) In event of an actual or threatened breach by employee of any of the provisions in this Agreement, it is expressly understood that Genesis will pursue compensation to the extent of the injury sustained. Accordingly, the undersigned agrees that in event this agreement is breached, s/he will be responsible for, and shall pay, any and all attorneys fees, expenses and costs incurred by Genesis Medical Imaging, Inc.

Thus, in addition to prohibiting DeMars from competing against Genesis, the Non-Compete Agreement also contained a non-solicitation provision and a provision protecting Genesis' confidential information. DeMars signed the Non-Compete Agreement voluntarily and had ample time to review the Non-Compete Agreement prior to signing.

DeMars officially began to work for Genesis on March 1, 2005, and continued his employment with Genesis until he voluntarily resigned effective August 15, 2006. During his approximately 16 months of employment at Genesis, DeMars was assigned to service a number of Genesis' customers, including Core Medical, Inc. dba Imatech ("Core Medical"). Core Medical was headquartered in Missouri and operated several MRI/CT facilities, including a medical office known as Commonwealth Orthopedics located in Crestwood, Kentucky. DeMars serviced the equipment at Commonwealth Orthopedics in June and July 2006. Core Medical LLC, a sister company, also operated Neosha Valley Imaging in Chenault, Kansas, and contracted with Genesis for service there.

DeMars was also assigned to service MRI/CT equipment at three facilities known as Dayton Medical Imaging, located in Vandalia, Ohio, Englewood, Ohio, and Centerville, Ohio, managed by Presgar Asset Management ("Presgar"). DeMars serviced all three of Dayton Medical Imaging locations on a regular basis. DeMars also serviced other Genesis' customers, including M.S. Community Health, located in Kentucky.

As an FSE for Genesis, DeMars periodically received a list of Genesis' customers, with selected contract information, including customer contact name, phone number, address, pricing information, contract terms, and preventative maintenance schedule. DeMars understood that this information was considered confidential by Genesis.

DeMars was living in Lexington, Kentucky when he was originally hired by Genesis. However, in June 2006 Genesis asked DeMars if he was willing to move to Michigan. He rejected the initial offer. DeMars then countered with a salary package he described as "ridiculous," but a second offer meeting DeMars' demands was subsequently tendered, and on July 26, 2006, DeMars indicated that the salary and move allowance was in order, but that he was not yet ready to commit. DeMars was then on vacation leave from July 25 through July 30, 2006. On August 1, 2006, DeMars emailed that he was tied up with family business.

Between August 1 and August 12, 2006, DeMars was supposed to be servicing Genesis customers, but he did not submit any report indicating any customer service. On August 11, 2006, DeMars filed a name change with the Kentucky Secretary of State to change the name of his company, Perry M. DeMars Trucking LLC[1], to PMD Services LLC. Then, on August 13, 2006, DeMars notified Genesis' president, vice-president, and several FSEs via email of his resignation effective August 15, 2006, stating that for "personal reasons I need to terminate my employment. Due to circumstances beyond my control I need to take care of family business . . . it cannot be avoided . . . if and when my situation improves or changes, I will contact you about possible reemployment."

---

[1] Perry M. DeMars Trucking LLC was a side business operated by DeMars in which he provided hauling services.

The evidence reveals that since at least mid-July 2006, DeMars was making arrangements to leave Genesis and was forming his own competing business. For instance, in July 2006, while employed by Genesis, DeMars was soliciting Core Medical personnel to service two facilities it owned or managed in Kentucky and at least two other states. In fact, DeMars entered into contracts to provide services to Core Medical's facilities beginning as early as August 1, 2006. By late August 2006, DeMars had three contracts with Core Medical for $21,000 a month ($7,000 per facility) plus overtime and materials for a period of three years. Additionally, DeMars provided services to Dayton Medical Imaging, and contacted M.S Community Health, in violation of the Non-Compete Agreement. The evidence also reveals that DeMars had obtained and had been using Genesis' proprietary computer billing and customer software for his own clients.

On October 26, 2007, Genesis filed its complaint against DeMars and PMD Services [DE #1], and on November 16, 2007 filed its amended complaint and motion for preliminary injunction [DE ##10, 11]. Specifically, Genesis alleges that DeMars is now providing MRI/CT services for customers previously serviced by DeMars while employed at Genesis. Genesis' complaint asserts claims for breach of contract, aiding and abetting breach of contract, tortious interference with contract, and injunctive relief. After a hearing, this Court entered its preliminary injunction on February 28, 2008 enjoining Perry M. DeMars and PMD Services, LLC, and anyone associated or acting in concert with them, as follows:

> (a) DeMars will not engage in any employment, consultation or association with any company, including PMD Services, that provides any MRI/CT service to any Genesis customer including Core Medical Inc. f/d/b/a Imatech, Core Medical LLC, and Presgar Asset Management, including the three Dayton Medical Imaging facilities located in Vandalia, Centerville, and Edgewood, Ohio;

    (b)    DeMars is directed to provide Core Medical (Inc. and LLC) and Presgar with a copy of this Order within three (3) business days of service of the Order and inform them that he and PMD Services can no longer provide services to either Core Medical or Presgar after five business days from the date of delivery of this Order to Core Medical and Presgar. No later than ten (10) days after entry of this Order, PMD and DeMars must cease all services to Core Medical (Inc. and LLC) and Presgar and any persons or entities associated or acting in concert with them. These facilities must engage other providers for MRI and CT services;

    (c)    DeMars is enjoined from calling upon or soliciting any customer of Genesis with whom DeMars performed any services while employed by Genesis;

    (d)    DeMars is enjoined and prohibited from communicating or disclosing or otherwise misappropriating any confidential, proprietary and/or trade secret information acquired from and through Genesis; and

    (e)    DeMars is enjoined from violation of any other terms and provisions of the Non-Compete Agreement.

Furthermore, Genesis was ordered to post security in the amount of $1,000, and the preliminary injunction remains in full force and effect until such time as the Court orders or the parties consent to its withdrawal [DE #37].

Currently pending before this Court is Genesis' motion for summary judgment and permanent injunctive relief pursuant to Rule 56 and Rule 65 of the Federal Rules of Civil Procedure [DE #52]. Specifically, Genesis seeks a permanent injunction precluding DeMars and PMD Services and others from the following actions for a period beginning February 28, 2008 and ending February 27, 2010:

    (a)    Using or referring to, directly or indirectly, any of Genesis' confidential information, as required under the terms of DeMars' Agreement;

    (b)    Providing any services and/or selling any competing products to, or doing any competing business with Genesis' existing customers as of DeMars' departure in August 2006, and certain prospective customers for a period of two years beginning on February 28, 2008;

  (c)  Making or engaging in any commercially disparaging or misleading comments concerning Genesis and/or Genesis' business operations; and

  (d)  Soliciting any of Genesis' current employees.

Additionally, Genesis requests a summary judgment that DeMars breached his Non-Compete Agreement, violated the Kentucky Uniform Trade Secret Act ("KUTSA"), and tortiously interfered with Genesis' contracts with certain customers. Genesis seeks compensatory damages in the amount of $399,719.35, jointly and severally, prejudgment interest, postjudgment interest, punitive damages, and attorneys fees and costs.

  Also pending before this Court is the defendants' motion for leave to file an amended answer [DE #47]. Genesis objects to the defendants' motion on many grounds, including the fact that it is not accompanied by a supporting memorandum setting forth any reason for the delay in filing, it was filed outside of the Court's deadline for amending pleadings, Genesis had no knowledge of the defendants' intent to ask for a jury trial or withdraw previously undisputed admission, and the likelihood of undue prejudice to Genesis. [DE #50]

## II. THE DEFENDANTS' MOTION TO FILE AN AMENDED ANSWER

  Turning first to defendants' motion for leave to file an amended answer, the Court notes that the motion was not filed until June 26, 2008 [DE #47]. The defendants' tendered amended answer includes major substantive changes from their prior answer, including a demand for a jury trial and withdrawal of prior admissions of fact and denial of allegations that were previously admitted. In support of their motion, the defendants state only that the amendments are based on discovery obtained in this matter.

The defendants filed their answer to the Amended Complaint on November 30, 2007 [DE #14]. The Court's March 5, 2008 Scheduling Order required that any motions to amend the pleadings be filed by June 6, 2008, the same date as the discovery deadline [DE #38]. Subsequent to the entry of appearance of the defendants' new counsel on April 12, 2008, a motion to extend the discovery deadline was filed, but contained no motion or request to extend the time to amend the pleadings [DE #44]. The Court, through Magistrate Judge Todd, granted the motion to extend the discovery deadline to June 26, 2008, and extended the deadline for dispositive motions to July 10, 2008 [DE #46] No order to extend the deadline for amended pleadings has been entered.

Nevertheless, on June 26, 2008, the day of the discovery deadline, the defendants filed their motion to amend their answer. The defendants have failed to show any good cause for their delay in filing this motion as required by Rule 16 of the Federal Rules of Civil Procedure. Allowing the defendants to amend their answer at this late date, without showing any good cause and without any prior notice to Genesis, is unfair and prejudicial to Genesis. Accordingly, the defendants' motion for leave to file an amended answer will be denied.

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

In response to Genesis' motion for summary judgment, the defendants have submitted a response containing many unsubstantiated and unsworn assertions. However, one week after filing their response, the defendants submitted a "verification" signed by DeMars which states:

> I have read my response to Plaintiff's Motion for Summary Judgment and other relief and the facts not otherwise attributed to any other source are true and correct to the best of my knowledge and belief.

[DE #56] This verification, however, does not satisfy the requirements of Rule 56(e)(1) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> ***In General***.  A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. . . .

Fed.R.Civ.P. 56(e)(1). Nor does the verification comply with the requirements of Rule 56(e)(2) of the Federal Rules of Civil Procedure, which provides as follows:

> ***Opposing Party's Obligation to Respond***. When a motion for summary judgment is properly made and supported, an opposing party may not rely on allegation or denials in its own pleadings; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed.R.Civ.P. 56(e)(2). In other words, an affidavit must (1) be made on personal knowledge, (2) set forth facts as would be admissible at trial, and (3) show that the affiant is competent to testify concerning the matters contained in the affidavit. Furthermore, "sworn or certified copies of all documents referred to in an affidavit must also be attached to the affidavit." *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). If the requirements of Rule 56(e) are not satisfied, the affidavit must be disregarded. *Id.*

DeMars' verification does not satisfy these requirements. The blanket verification fails to identify any specific facts DeMars affirms or nor does it contain reference to any documents upon which DeMars relies. Additionally, the verification fails to show that DeMars is competent to testify on any or all matters contained in his response. Thus, the portions of the defendants' response to Genesis' motion for summary judgment which are not supported by appropriate reference to any affidavit, deposition, or other admissible evidence will not be considered.

**IV.   SUMMARY JUDGMENT ANALYSIS**

Genesis' First Amended Complaint asserts three causes of action: (1) breach of contract based on the Non-Compete Agreement, including confidentiality and non-solicitation obligations;

(2) violation of the Kentucky Uniform Trade Secret Act; and (3) tortious interference of contract. For the reasons set forth below, Genesis is entitled to summary judgment on each claim.

    A.    **BREACH OF CONTRACT**

In support of its breach of contract claim, Genesis contends that the defendants' actions prior to and after DeMars' resignation violated both the non-compete and confidentiality portions of the Non-Compete Agreement. Courts in Kentucky have generally upheld covenants not to compete provided that "they are reasonable in scope and in purpose." *Hall v. Willard & Woolsey*, 471 S.W.2d 316, 317 (Ky. 1971). Furthermore, "[r]easonableness is to be determined generally by the nature of the business or profession and employment, and the scope of the restrictions with respect to their character, duration and territorial extent." *Id*. at 317-18.

A non-compete agreement is reasonable if the scope and duration of the agreement are limited to only what is necessary to protect the employer from unfair competition. According to one Kentucky court:

> [a]n agreement in restraint of trade is reasonable if, on consideration of the subject matter, the nature of the business, the situation of the parties and the circumstances of the particular case, the restriction is such only as to afford fair protection to the interests of the covenantee and not so large as to interfere with the public interests or impose undue hardship on the party restricted.

*Ceresia v. Mitchell*, 242 S.W.2d 359, 364 (Ky. 1951) (quoting 17 C.J.S., Contracts § 247). It is therefore up to the Court to determine whether the scope and duration of the Non-Compete Agreement are reasonably based upon the specific facts of this case.

The Non-Compete Agreement, executed voluntarily by DeMars at the time he began his employment, is limited to two years in duration. While it is nationwide in geographic scope, Genesis employs approximately 24 FSEs which service customers in locations that span the United States.

DeMars himself worked on behalf of Genesis in several states, and worked for many clients with offices in other states. The inclusion of a geographic term of anything less than the entire United States would permit DeMars to solicit prospective customers headquartered in another region, but then provide the services in Kentucky to circumvent the Non-Compete Agreement. Moreover, the Non-Compete Agreement is narrowly tailored to restrict DeMars from competing with Genesis' customers or customers with whom Genesis had a significant proposal twenty-four months prior to his termination. Although the defendants argue that the Non-Compete Agreement is overly restrictive, the evidence reveals that DeMars and/or PMD Services could have legally competed for several hundred other MRI/CT facilities and customers in Kentucky, as well as several thousand throughout the United States, that were not existing Genesis customers and/or to whom Genesis had not made any significant marketing proposal in the two years before DeMars' departure.

The Court also finds that the Non-Compete Agreement is clear in that it applies to Genesis' customers regardless of whether Genesis had a full-service contract with them or whether Genesis simply serviced the customer on a "time and materials" basis or as a secondary provider. The Non-Compete Agreement clearly prohibited DeMars from soliciting or interfacing with *any* of Genesis' customers for 24 months after termination of his employment.

DeMars contends that because he never received any training from Genesis, he should not be bound by the Non-Compete Agreement since he already knew how to service GE manufactured MRI/CT equipment when he joined Genesis. This argument also fails. The Non-Compete Agreement is not contingent on DeMars' receipt of any training; rather, execution of the Non-Compete Agreement was a condition of DeMars' employment at Genesis. While at Genesis, however, DeMars did acquire knowledge of Genesis' customers' facilities, including the type of

equipment, service history, patient use, pricing, and business practices of the customer. Also while at Genesis, DeMars had access to Genesis' billing software which contained pricing information. DeMars used this confidential information and billing software to compete against Genesis in violation of the Non-Compete Agreement. Accordingly, the Court finds that Genesis is entitled to summary judgment on its breach of contract claim.

      B.      **KENTUCKY UNIFORM TRADE SECRET ACT**

Genesis claims that DeMars used confidential information, including contact information and pricing, to solicit its customers. Kentucky law allows for injunctions for trade secret misappropriation under the Kentucky Uniform Trade Secret Act, KRS § 365.880, if DeMars misappropriated or is likely to misappropriate information that is a trade secret. KUTSA defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, data, device, method, technique or process that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

K.R.S. § 365.880(4). A trade secret is misappropriated if the person who uses the information knows or has reason to know, at the time of disclosure or use, that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit is use. *Id.* § 365.880(2).

The evidence reveals that DeMars has used customer information developed through a substantial amount of time, effort, and expense by Genesis' salesmen who attended trade shows, and called upon and developed relationships with potential customers to solicit Core Medical, Presgar,

and M.S. Community Health. DeMars admits he had access to Genesis' pricing information, the names of its customers, their contact information, their schedule for preventative maintenance, the hourly rate charged to the customer, and the overtime rate charged to the customer. He used this information to solicit new business and to charge Genesis' former clients the same or lower hourly rate. DeMars also admits that he is using a template owned by Genesis to input the service hours for customers, compute his hourly rate, and then generate a customer report. Certainly, the evidence is clear that DeMars misappropriated Genesis' confidential, trade secret information and Genesis is therefore entitled to summary judgment on this claim.

### C. TORTIOUS INTERFERENCE

Finally, Genesis claims that DeMars tortiously interfered with its contractual relationships with its customers. Under Kentucky law, the plaintiff in a tortious interference case must prove a contract, the defendant's knowledge of the contract, the defendant's intent to breach it resulting in damages, without privilege or justification. *See NCAA v. Horning*, 754 S.W.2d 855, 857 (Ky. 1988). DeMars, a party to the Non-Compete Agreement, knew that Genesis had contracts with Core Medical, Presgar, and M.S. Community Health because he was the FSE for those customers. Additionally, DeMars deliberately misled Genesis about his employment plans while he was secretly negotiating new contracts with Genesis' customers. Even if DeMars believed these contracts were terminated, the Non-Compete Agreement precludes DeMars from soliciting or interfering with these customers for twenty-four months after his resignation. There is simply no justification for DeMars' actions, and his conduct falls squarely within the ambit of tortious interference. Accordingly, Genesis is entitled to summary judgment on this claim.

V.     **PERMANENT INJUNCTION**

In addition to its motion for summary judgment, Genesis also seeks a permanent injunction. Rule 65 of the Federal Rules of Civil Procedure governs the issuance of a permanent injunction. According to the Sixth Circuit, in seeking a permanent injunction, a party must make a clear showing of a significant threat that irreparable injury will result if relief is not granted, and that no other adequate legal remedy is available. *City of Parma v. Levi*, 536 F.2d 133, 135 (6th Cir. 1976). The Sixth Circuit has held that the loss of fair competition resulting from the breach of a non-compete agreement may harm an employer irreparably. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir.1992); *see also Wells v. Merrell Lynch Pierce Senner & Smith*, 919 F.Supp. 1047, 1052 (E.D.Ky 1994). Certainly, the fact that the defendants obtained contracts from Genesis' former clients establishes the loss of fair competition and goodwill. The damages flowing from such losses are difficult to compute and not susceptible to monetary valuation. *Basicomputer*, 973 F.2d at 512. Because there is no other adequate remedy available, Genesis is entitled to permanent injunctive relief to prevent further violations of the Non-Compete Agreement.

Genesis contends that the permanent injunction should run from two years from the date the Court entered its preliminary injunction - February 28, 2008. This Court agrees. Because the defendants were acting in violation of the Non-Compete Agreement until issuance of the preliminary injunction, Genesis is entitled to the full two-year term set out in the Non-Compete Agreement in order to allow it an opportunity to regain customers lost by the defendants' actions and to prevent the defendants from benefitting from their breach by shortening the stated term of the Non-Compete Agreement. Therefore, the permanent injunction should run for two years - from February 28, 2008, the date of issuance of the preliminary injunction, until February 27, 2010.

When it granted Genesis' motion for preliminary injunction, the Court required Genesis to post security in the amount of $1,000 [DE #37]. Genesis paid this security bond on February 28, 2008 [DE #39]. The purpose of such a bond is to provide "security . . . for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined and restrained." Fed.R.Civ.P. 65(c). The Court has determined that Genesis has succeeded on its claims and that a permanent injunction is warranted. Therefore, a security bond is no longer necessary and the Court will direct the Clerk to return the security to Genesis.

## VI. DAMAGES AND ATTORNEYS FEES

In addition to entry of a permanent injunction, Genesis also seeks monetary damages for its lost profits based on the defendants' conduct, as well as punitive damages. However, the Court finds that there is a genuine issue of material fact with respect to the amount of damages due to Genesis. Therefore, Genesis' motion for summary judgment on damages and attorneys fees and costs will be denied. The issue of the amount of damages due to Genesis, as well as attorneys fees and costs, will be reserved for trial by the Court, currently set for November 4, 2008. The Court's March 5, 2008 Scheduling Order remains in effect and the parties shall tender their pretrial filing consistent with this Opinion & Order.

## VII. CONCLUSION

For the reasons set forth above, the Court finds that Genesis is entitled to partial summary judgment and permanent injunctive relief. Thus, the Court, being fully and sufficiently advised,

**HEREBY ORDERS**:

(1) The defendants' motion for leave to file an amended answer [DE #47] is DENIED;

(2) Genesis' motion for summary judgment and permanent injunction [DE #52] is **GRANTED IN PART** with respect to Genesis' claims based on breach of contract, the Kentucky Uniform Trade Secret Act, and tortious interference with contract, and **DENIED IN PART** with respect to Genesis' claims for damages and attorneys' fees and costs;

(3) Judgment in favor of Genesis will be entered at the conclusion of this action;

(4) A permanent injunction will be entered contemporaneously with this Opinion & Order;

(5) The Clerk is **DIRECTED** to **RETURN** the posted security in the amount of $1,000 to Genesis; and

(6) This action **REMAINS PENDING** on Genesis' claim for damages and attorneys' fees and costs.

This September 5, 2008.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge